# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE : | |
| INSURANCE COMPANY, ET AL., : | |
|     Plaintiffs, : | |
| : | CIVIL ACTION |
|         v. : | |
| : | NO. 07-518 |
| PETER J. CORDUA, ET AL., : | |
|     Defendants. : | |

## MEMORANDUM AND ORDER

**Tucker, J.**                                                                                                  **March \_\_\_ , 2010**

      Presently before this Court is Plaintiffs' Motion to Compel Defendant D'Amico to Amend his Answers to Plaintiffs' Second Set of Requests for Admissions (Doc. 73) and the Response in Opposition thereto filed by Defendants D'Amico and United Cut Rate Store, Inc. (Doc. 77). For the reasons stated below, the Court grants Plaintiffs' Motion in part.

## BACKGROUND

      The facts giving rise to the Complaint are as follows. On September 20, 2002, Plaintiffs initiated a civil action (hereinafter "the Underlying Claim") against parties not named in the present Complaint for allegedly participating in a scheme to defraud Plaintiffs by, inter alia, submitting fraudulent medical reports, medical bills and other documents to obtain improper insurance payments from Plaintiffs. On March 30, 2006, judgment was entered against all of the defendants in the Underlying Claim.

      Plaintiffs allege that during the litigation of the Underlying Claim, they obtained copies of bank records of the defendants in the Underlying Claim, which revealed that several checks ranging in amount from $10,275 to $570,222 had been cashed by United Cut Rate Store, Inc., a

business owned by Defendant D'Amico. Plaintiffs also aver that they learned that Defendant Cordua owns an accounting practice, Cordua and Company, P.C., which provided financial services to the parties in the Underlying Claim. Plaintiffs allege that Defendants fraudulently conveyed monies to the defendants in the Underlying Claim and conspired with those defendants to conceal their assets by cashing checks make out to fictitious third parties to supply the defendants in the Underlying Claim with large sums of cash.

On February 6, 2007, Plaintiffs filed a Complaint (Doc. 1) against Defendants D'Amico, United Cut Rate Store, Inc. and Cordua for allegedly assisting, aiding and/or facilitating the transfer of assets of the defendants in the Underlying Claim in an effort to keep funds out of the reach of their creditors, including Plaintiffs.[1]

Defendants generally deny Plaintiffs' allegations. Defendant D'Amico claims that he does not know what the bank records reflect as he does not serve as the custodian of such information for the defendants from the Underlying Claim. He also claims he did not engage in illegal conduct, but, rather, he operated his business as a licensed check cashier and collected appropriate and allowable fees in compliance with the Pennsylvania's Check Cashier Licensing Act, 63 P.S. § 2301, et seq. Defendant Cordua denies that the check funds were divided between him and any other parties and that there was any intent to defraud any creditors.

The case has been in the discovery phase since it was initiated back in 2007.[2] On

---

[1] Plaintiffs' Complaint contains the following five counts: Count I for violating 12 Pa.C.S. §§ 5101-5110; Count II for violating N.J.S. 25:2-20 et seq.; Count III for conspiracy to violate 12 Pa.C.S. §§ 5101-10; Count IV for conspiracy to violate N.J.S.A. 25:2-20 et seq.; and Count V for Concerted Tortious Action.

[2] In a letter dated March 22, 2010, Plaintiffs' counsel indicated that discovery has generally concluded and the matter should proceed to the expert discovery phase.

November 4, 2008, Plaintiffs sent Defendant D'Amico its Second Set of Requests for Admissions. The list of 22 admissions asked Defendant to admit whether he or United Cut Rate Store, Inc. "utilized" various First Union Bank accounts. All of the requests for admissions followed the same format: "It is admitted that First Union Bank account #[account number provided] is a bank account utilized by [Martin D'Amico or United Cut Rate Store, Inc.]."

On December 2, 2008, Defendant D'Amico responded to Plaintiff's requests for admissions. Defendant D'Amico admitted six of the twenty-two requests and denied the remaining sixteen requests. Wherever Defendant D'Amico responded "Denied", he included one of the following statements: "Denied. This is a corporate account and not Defendant, Martin D'Amico's personal account."; "Denied. This is not a First Union Bank Account."; "Denied. This is not Defendant, Martin D'Amico's personal account."; or "Denied. This is not a corporate account of United Cut Rate Store, Inc."

On July 15, 2009, Plaintiffs filed a Motion to Compel Defendant D'Amico (Doc. 73) to either (1) amend his Answers to Plaintiffs' Second Set of Requests for Admissions or (2) have the admissions deemed admitted pursuant to Federal Rule of Civil Procedure 36 ("Rule36"). On July 30, 2009, Defendants filed a Response in Opposition thereto (Doc. 77). The Court now addresses this pending motion.

## **APPLICABLE LAW**

Rule 36 allows a party to "serve upon any other party a written request to admit . . . the truth of any matters within the scope of Rule 26(b)(1)" relating to, inter alia, "facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a). "The purpose of Rule 36(a) is to narrow the issues for trial to those which are genuinely contested." United Coal

Companies v. Powell Constr. Co., 839 F.2d 958, 967 (3d Cir. 1988). "If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). "Where . . . issues in dispute are requested to be admitted, a denial is a perfectly reasonable response." Id. "However, qualifications are permitted when good faith requires that a party qualify an answer." Caruso v. Coleman Co., No. 93-CV-6733, 1995 WL 347003, at *2 (E.D. Pa. June 07, 1995) (citing Fed. R. Civ. P. 36(a)). See also Fed. R. Civ. P. 36(a)(4) ("a denial must fairly respond to the substance of the matter") .

"Once a party has answered a request, the requesting party may seek a judicial determination of the sufficiency of the answers." Williamson v. Corr. Med. Servs., No. 06-379-SLR, 2009 WL 1364350, at *2 (D. Del. May 14, 2009). "In evaluating the sufficiency of the answers, the court should consider: (1) whether the denial fairly meets the substance of the request; (2) whether good faith requires that the denial be qualified; and (3) whether any 'qualification' which has been supplied is a good faith qualification." Id. (internal citations omitted). In addition, the court should "consider the phraseology of the requests as carefully as that of the answers or objections." United States v. Chevron U.S.A. Inc., No. 88-6681, 1989 WL 100927, at *1 (E.D. Pa. Aug. 30, 1989). Courts should not, however, "allow the responding party to make hair-splitting distinctions that frustrate the purpose of the Request." United States v. Lorenzo, No. 89-6933, 1990 WL 83388, at *1 (E.D. Pa.1990). With respect to the request for admission, regardless of its subject matter, "the statement. . . should be in simple and concise terms [so] that it can be denied or admitted with an absolute minimum of explanation or qualification." Chevron U.S.A. Inc., 1989 WL 100927, at *2. With respect to the response to the request for admission, an answer will be deemed insufficient if it appears "to be non-specific,

evasive, ambiguous and . . . go to the accuracy of the requested admissions rather than the 'essential truth' contained therein." Lorenzo, 1990 WL 83388, at * 1 (internal citations omitted). "On a finding that an answer does not comply with [Rule 36], the court may order either that the matter is admitted or that an amended answer be served." Fed. R. Civ. P. 36(a)(6).

## DISCUSSION

Plaintiffs argue that Defendant D'Amico violated Rule 36 by failing to sufficiently answer the November 4, 2008 Request for Admissions ("RFAs") as instructed, both as an individual and as a representative of United Cut Rate Store, Inc. Specifically, Plaintiffs claim that Defendant's answers were non-responsive and inadequate because Defendant's answers did not indicate whether he "utilized" any of the accounts listed, rather, they merely denied that he or United Cut Rate Store personally "held" the accounts. Plaintiffs argue that the ownership of the listed accounts is immaterial to their admissions requests. Plaintiffs further claim their motion to compel is appropriate because they have evidence proving that Defendant did in fact utilize the First Union Bank account numbers listed in the RFAs by cashing checks on behalf of Defendant Cordua and the defendants in the Underlying Claim.

Defendants disagree and contend that their responses to the RFAs fully and completely complied with the requirements of Rule 36. In addition, Defendants argue that Plaintiffs' RFAs were poorly worded, compound and propounded without definitions so as to define what Plaintiffs meant by certain terms. For example, Defendants argue that the account numbers listed for RFAs No. 2, 4 and 6 were not even First Union accounts, and therefore the denial of each of the requests was made in good faith because the requests themselves were improper and required them to admit to utilizing various accounts that did not exist.

Defendants also argue that the denial of RFAs No. 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, and 21 was based upon a good faith belief that they did not "utilize" any of the accounts referenced. To support this argument, Defendants contend that the RFAs are compound and seek the admission of two separate facts: (1) that the accounts are First Union Accounts and (2) that they were utilized by D'Amico. As written, Defendants claim that the RFAs are vague. Finally, Defendants claim that the RFAs imply that D'Amico personally utilized the account for a malicious purpose, and that rather than object to the requests, he decided to deny the admissions and qualify his response in good faith.

### A. Sufficiency of Defendants' Responses to RFA No. 2, 4 and 6

The Court finds that a clear inaccuracy in a RFA is a proper reason for a denial. For RFA No. 2, 4 and 6, where the account number listed is not a First Union account, Defendants' denial and qualification was proper and does not require an amendment.

### B. Sufficiency of Defendants' Responses to RFA No. 1, 3, 5, 7, 9, 11, 13, 15, 17, 19 and 21

The Court believes Defendants' responses to RFAs No. 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, and 21 do not fairly meet the substance of the requests as required by Rule 36. Moreover, for several reasons, the Court does not believe that the responses and qualifications supplied by Defendants were supplied in good faith. First, the Court agrees with Plaintiffs' argument that whether the account belongs or is held by an entity or person has no relation to whether an entity or person utilizes that particular account. For each of the above-mentioned RFAs, Defendants supplied one of the following responses: "Denied. This is a corporate account and not Defendant, Martin D'Amico's personal account."; "Denied. This is not Defendant, Martin D'Amico's personal

account."; or "Denied. This is not a corporate account of United Cut Rate Store, Inc." Because Defendants' qualifications focus on the identity of the account holder and not whether Defendants used the accounts, the responses are evasive. The Court will not allow Defendants to make such "hair-splitting distinctions" that serve no purpose other than to frustrate the purpose of the RFAs.

Furthermore, Defendants' attempt to construe the RFAs as compound, vague, and conveying improper inferences is a disingenuous attempt to shift the focus away from the essential truth of the information sought to the accuracy of the RFAs. Defendants first seek to challenge the accuracy of the RFAs based on their "compound" nature. All of the RFAs, however, have the same format; Defendants did not object to any of the requests before responding; and Defendants admitted several of the requests with no qualification. As such, Defendants' claim that the RFAs are unduly compound does not appear to be made in good faith.

Defendants also seek to challenge the accuracy of the RFAs on the ground that the requests imply that Defendants used the accounts for a malicious purpose. The Court finds this argument without merit. Plaintiffs simply ask whether Defendants utilized the accounts listed. A mere admission of use does not go so far as to indicate or imply the purpose behind such use. Furthermore, were the Court to accept Defendants' logic, the Court would in essence sanction the implication that the six accounts Defendants admitted utilizing were used for a malicious purpose. The admission of use alone does not warrant such a conclusion.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiffs' Motion to Compel is granted in part. Defendants responses to requests 2, 4 and 6 were sufficient, and Plaintiffs' Motion to Compel an amended response to those RFAs is denied. Defendants responses to requests 1, 3, 5, 7, 9, 11, 13, 15, 17,

19, and 21 failed to comply with Rule 36, and Plaintiffs' Motion to Compel an amended response to those RFAs is granted. Defendants shall serve amended answers to requests 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, and 21 within ten (10) days from the date of this Order. An appropriate Order follows.