IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, ET AL., Plaintiffs, | : : : : | |
| | : | CIVIL ACTION |
| v. | : : | NO. 07-518 |
| PETER J. CORDUA, ET AL., Defendants. | : : : | |

**MEMORANDUM AND ORDER**

Tucker, J.                                                                                          December ___, 2011

Presently before the Court is Defendant Peter J.Cordua's Motion for Summary Judgment (Doc. 93), Defendants' Martin D'Amico and United Cut Rate Store, Inc., (collectively "United") (Doc. 94) Motion for Summary Judgment, Plaintiffs' Response (Doc. 98 and 99), Defendants' Reply (Doc. 102 and 103), and Plaintiffs' Sur-reply (Doc. 109 and 110). For the reasons set forth below, the Court will dismiss Plaintiff's constructive fraud claims only. The remaining claims are now ripe for trial.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

This case stems from a civil action (hereinafter the "underlying claim") filed by Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company ("State Farm") on September 20, 2002, against Ronald Nestel, Midtown Medical Center, Inc., Paul Bove, Simon Fishman, Frank Solomon, Tabor Chiropractic Center, P.C. and Physicians Practice Management Company. See State Farm Mut. Auto. Ins. Co. v. Midtown Med. Ctr., Inc., et al., No. 2:02-cv-07389 (E.D. Pa. 2006). In March 2006, State Farm secured a money judgment against all of the Midtown defendants for damages for statutory insurance fraud, common law

fraud, civil RICO violations, unjust enrichment, and restitution for payments based on fraudulent medical records and billing, as well as punitive damages.[1] (Compl. ¶¶ 9-10).

During pre-trial discovery in the Midtown Matter, State Farm obtained copies of the bank records of Ronald Nestel, Midtown Medical Center, Inc. and Physicians Practice Medical Company, Inc. revealing that checks drawn on those accounts were cashed at United Cut Rate Store, Inc., (hereinafter "United"), a check cashing agency owned by Martin D'Amico. (Compl. ¶¶ 4, 13.) Plaintiffs received copies of the checks during the first week of December 2003. Additional checks were provided in February of 2004 and on or about March 19, 2004. (See State Farm, et. al. v. Midtown Med. Ctr., Inc., et al., No. 2:02-cv-07389 (E.D. Pa. 2006), Pls.' Supplemental Resp. ¶ 12.)

During the Midtown trial, Mr. D'Amico testified that Mr. Cordua, the Midtown Defendants' accountant, was the person cashing the checks at United. Prior to this time, Plaintiffs contend that they had no reason to suspect that Defendants were involved in a fraudulent check cashing scheme with Mr. Nestel. Instead, Plaintiffs claim that they reasonably believed that Mr. Nestel was cashing the checks and keeping the money for himself given that Mr. Nestel signed the checks. (Pls.' Resp. ¶ 9; Mr. D'Amico's Trial Testimony at p. 9, February 8, 2006).

The checks were cashed at United starting as early as 1999. The parties are in dispute as to when the Defendants actually stopped cashing the checks, although both parties agree that the latest cancelled check in Plaintiffs' possession is dated August 1, 2002. (Pls.' Surreply in Opp'n

---

[1] Due to the judgment in the Underlying Claim, State Farm is a creditor of Ronald Nestel, Midtown Medical Center, Inc. and Physicians Practice Management Company, Inc. in the amounts of $2,246,246.00, $784,400.00, and $784,400.00, respectively.

to Def. Cordua's Reply Br.  p. 2) (hereinafter "Pls.' Surreply").

On February 6, 2007, Plaintiffs filed the instant action against Defendants Martin D'Amico, United Cut Rate Store Inc. (collectively "United") and Peter J. Cordua asserting violations of the Pennsylvania Uniform Fraudulent Transfer Act (PUFTA), the New Jersey Uniform Fraudulent Transfer Act (NJUFTA), and common law claims for civil conspiracy to violate those statutes and for concerted tortious actions.[2] (Complaint, ¶ 21.)  Specifically, Plaintiffs alleged that the Defendants aided in fraudulently transferring the assets of the Midtown defendants to prevent Plaintiffs and other creditors from executing on them.  Plaintiffs also aver that Defendants and possibly others conspired together to engage in the above-referenced transfers. (Complaint, ¶ 22, 40, 46.)

Defendants generally deny the allegations set forth in Plaintiffs' Complaint.  Defendant D'Amico claims that he did not engage in illegal conduct, but, rather, he operated his business as a licensed check cashier and collected appropriate and allowable fees in compliance with the Pennsylvania Check Cashier Licensing Act, 63 P.S. § 2301, et seq.  (Def. United's Answer ¶ 25.) Defendant Cordua claims that his relationship with Mr. Nestel was that of a bailor/bailee only. Cordua denies that the check funds were divided between him and any other parties. The Defendants collectively deny having the intent to defraud State Farm or any other creditors. (Def. Cordua's Answer ¶ 25.)

---

[2]  Plaintiffs' Complaint contains the following five counts: Count I for violating 12 Pa.C.S. §§ 5101-5110; Count II for violating N.J.S. 25:2-20 et seq.; Count III for conspiracy to violate 12 Pa.C.S. §§ 5101-10; Count IV for conspiracy to violate N.J.S.A. 25:2-20 et seq.; and Count V for Concerted Tortious Action.

## II. **LEGAL STANDARD**

Summary judgment is appropriate where the movant establishes that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Levy v. Sterling Holding Co., LLC, 544 F.3d 493, 501 (3d Cir. 2008). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (noting that no triable issue exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor); see also Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. See Celotex, 477 U.S. at 327 (1986).

Once the movant has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (citation omitted). Under Rule 56(e), the opponent must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. See Martin v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007). If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2).

At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249; Jiminez v. All American Rathskeller, Inc., 503 F.3d 247,

253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-movant. See <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587; <u>Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.</u>, 258 F.3d 132, 140 (3d Cir. 2001). The court must award summary judgment on all claims unless the non-movant shows through affidavits or admissible evidence that an issue of material fact remains. See <u>e.g.</u>, <u>Love v. Rancocas Hosp.</u>, 270 F. Supp. 2d 576, 579 (D.N.J. 2003).

### III. DISCUSSION

1. **Defendants' Argument that Plaintiffs' Claims Are Untimely** [3]

Defendants request that the Court dismiss Plaintiffs' claims on statute of limitations grounds. Specifically Defendants argue that Plaintiffs' claims are untimely since: (1) PUFTA and NJUFTA require claims for "constructive" fraud to be filed within four years after the transfer was made, and Plaintiffs' suit was filed more than four years after the checks were cashed; (2) PUFTA and NJUFTA require claims based on "actual intent" to defraud to be filed within four years after the transfer, or, if later, within one year after the transfer was or could reasonably have been discovered, and Plaintiffs' suit was filed more than one year after Plaintiffs obtained copies of the cancelled checks; (3) Plaintiffs' state law tort claims must be filed within two years, and Plaintiff's suit was filed more than two years after the checks were cashed; and (4) Plaintiffs' tort claims are unsupported since they are based on barred statutory claims. (Doc.93, 94). The Court will address these arguments in turn.

    a) **Plaintiffs' PUFTA Claims**

---

[3] The Court notes that while Defendants Cordua and United filed separate motions for Summary Judgment, both parties raise a number of common issues. Therefore, in order to avoid a duplicative discussion of the two motions, the Court will address the parties commonly raised issues jointly.

Under the Pennsylvania Uniform Fraudulent Transfer Act (PUFTA)[4], a party may file a claim alleging actual and/or constructive fraud.  12 Pa.C.S. §§ 5101 -5110; see also Kaliner v. MDC Sys. Corp., LLC, 2011 U.S. Dist. LEXIS 5377 (E.D. Pa. Jan. 19, 2011); US v. Rocky Mountain Holdings, Inc., No. CIV.A.08-03381, 2011 WL 891823, at * 9 (E.D. Pa. 2011).  A claim for "actual fraud" may be asserted irrespective of whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with "actual intent to hinder, delay, or defraud any creditor of the debtor." 12 Pa.C.S. §5104(a)(1).  Similarly, a party may assert a claim for constructive fraud if the debtor made the transfer "without receiving a reasonably equivalent value in exchange for the transfer" and the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer.[5]   12 Pa.C.S. §§5104(a)(2).

  i.    **Plaintiffs' Constructive Fraud Claims**

In their motion for summary judgment, Defendants argue that based on the plain language of PUFTA, Plaintiffs' constructive fraud claims are time-barred since the latest transfer (referring to the cashing of checks at United) occurred on August 1, 2002.  In opposition,

---

[4] The relevant provisions of PUFTA and NJUFTA set forth in Plaintiffs' Complaint are virtually identical.  Therefore, when the Court makes reference to PUFTA, such analysis is equally applicable to Plaintiff's NJUFTA claims unless otherwise stated.

[5]
(i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor was unreasonably small in relation to the business or transaction; or

(ii) intended to incur or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

12 Pa.C.S. § 5104(2)(a)(i)(ii).

Plaintiffs contend that their claims are timely since Cordua is uncertain as to when he actually stopped cashing checks for the Midtown Defendants. Moreover, Plaintiffs contend that the common law "discovery rule" tolled the applicable statute of limitations until Plaintiffs learned of the injury. (Pl.s' Resp. ¶¶ 4-9).

As a general rule, a PUFTA action is extinguished if it is not brought within four years after the alleged fraudulent transfer was made. See 12 Pa.C.S. § 5109; see also Hecht v. Malvern Preparatory School, 716 F.Supp.2d 395, 398 (E.D. Pa. 2010). While Plaintiffs contend that Defendant Cordua failed to provide evidence documenting exactly when the transfers stopped, the latest cancelled check in Plaintiffs' possession is dated August 1, 2002. (Pls. Resp. p. 9.) Given that the checks are the basis of Plaintiffs' claim, the Court finds this date is sufficient to determine when the last transfer occurred. Therefore, to preserve their claim the latest Plaintiffs could have sued was on August 1, 2006.

Additionally, Plaintiffs also contend that the discovery rule tolled the statute of limitations since Plaintiffs had no way of knowing about the transfers until the Midtown trial. Though relevant to the Court's discussion concerning Plaintiffs' actual intent to defraud claim, this argument is inapplicable to constructive fraud claims as there is no discovery exception cited in section 5109(2)[6]. The relevant provision for constructive fraud claims expressly provides for extinguishment of an action when the transfer was made, not when it was discovered. See 12 Pa.C.S. §5109(2). As such, the Court will dismiss Plaintiffs' constructive fraud claims as against both Defendants.

---

[6] 12 Pa.C.S. §5109(2)

### ii. Plaintiffs Actual Intent to Defraud Claims

Neither party is in dispute as to the applicable statute of limitations which provides that claims based on "actual intent" to defraud are extinguished unless brought within four years after the transfer was made or, if later, within one year after the transfer was or could have reasonably been discovered. 12 P.a.C.S. § 5109(1).[7] Where the parties disagree is when the statute of limitations is triggered. Defendants contend that the statute should be read to require claimants to bring suit within one year of discovering the transfer itself. Therefore, Defendants assert, the Plaintiffs should have filed suit in March 2005 one year after Plaintiffs obtained the final copies of the cancelled checks. Plaintiffs, however, argue that the limitations period begins upon discovery of the fraudulent nature of the transfer, not the transfer alone. Plaintiffs claim due to Mr. Cordua's efforts to conceal his actions and the fraudulent nature of the check-cashing scheme, although they had copies of the checks, they did not discover money had been fraudulently transferred to the Defendants until trial in the Midtown Matter. Plaintiffs, therefore assert that their actual intent to defraud claim is timely since they filed suit less than a year after

---

[7] Similarly, NJUFTA provides that a cause of action with respect to a fraudulent transfer or obligation is "extinguished" unless the action is brought:

> (a) Under subsection a. of R.S. 25:2-25; within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was discovered by the claimant;
>
> (b) Under subsection b. of R.S. 25:2-25 or subsection a. of R.S. 25:2-7, within fours years after the transfer was made or the obligation was incurred; or
>
> (c) Under subsection b. of R.S. 25:2-27, within one year after the transfer was made or the obligation was incurred.

N.J.S.A. 25:2-31.

they discovered their injury.

The crux of Plaintiffs' argument is that the discovery rule should apply to PUFTA's one-year discovery exception given the fraudulent nature of Defendants' activities. The discovery rule functions to toll the statute of limitations when a plaintiff, "despite the exercise of due diligence, is unable to know of the existence of the injury and its cause." Bohus v. Beloff, 950 F.2d. 919, 924 (3d. Cir. 1991.)  The applicable standard is whether "the plaintiff knows, or reasonably should know" (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." See Oshiver v. Levin, et. al., 38 F.3d 1380, 1386 (3d. Cir. 1994); see also Urland v. Merrell-Dow Pharmaceuticals, Inc., 822 F.2d 1268, 1271 (3d. Cir. 1987) (quoting Cathcart v. Keene Industrial Insulation, 324 Pa.Super. 123, 136-37, 471 A.2d 493, 500 (1884) (in banc) (footnote omitted)).  Tantamount to the "discovery rule" is the doctrine of fraudulent concealment which provides that the defendant will be "estopped from asserting the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts." Hoppe v. Smithkline Beecham Corp., 437 F.Supp.2d 331 (E.D.Pa., 2006).

The Supreme Court of Pennsylvania has made clear that both the "discovery rule" and the doctrine of fraudulent concealment rest upon the same "knew or should have known" standard, therefore, the inquiries are the same. Urland, 822 F.2d at 1271-1272 (citations omitted).  The relevant inquiry then is not plaintiff's actual knowledge, but rather whether the knowledge was known, or through the exercise of diligence, knowable to [the] plaintiff." Bohus, 950 F.2d at 959.   The Court can find no reason why this same principle should not apply to the discovery of fraudulent transfers under PUFTA.

To support their position, Defendants request the Court to employ the analysis found in Western Hay Co. v. Lauren Fin. Invs., Ltd., 2011 Fla. App. LEXIS 6353, ** 2-3 (Fla. Dist. Ct. App. 3d Dist. May 4, 2011).  In Western Hay, the Florida Court of Appeals held that the statute of limitations on fraudulent transfers begins to run when the transfer itself could be discovered.  The Defendants' reliance upon Western Hay is misplaced.  To begin with, the finding in Hay is clearly the minority's approach to the one-year savings provision contained in the uniform transfer act.  While the issue has not yet been decided in this jurisdiction, the majority of other jurisdictions have consistently held that the one-year savings provision does not begin to accrue until the creditor discovers or could have reasonably discovered the nature of the fraudulent transfer. See Freitag v. McGhie, 133 Wash.2d 816, 947 P.2d 1186, 1190 (Wash. 1997) (holding that UFTA's one-year savings provision provides a "one-year period from the date of discovery of the fraudulent nature of the transfer within which to initiate a claim under UFTA."); Duran v. E.G. Henderson, 71 S.W.3d 833, 839 (Tex. App. 2002) (rehearing overruled) (holding that "[a] creditor's cause of action to set aside a fraudulent conveyance accrues[, and thus the limitation period does not begin to run, until] the creditor acquires knowledge of the fraud, or would have acquired knowledge of the fraud in the exercise of ordinary care.") (citation omitted); Rappleye v. Rappleye, 99 P.3d 348, 356, 2004 UT App 290 (Utah Ct. App. 2004) (holding UFTA incorporates a fraudulent discovery rule within the one-year savings provision, and as such, the limitations period is determined by the date on which the creditor was "on notice that the conveyance was fraudulent"); In re Sw. Supermarkets, L.L.C., 315 B.R. 565, 577 (Bankr. D. Ariz. 2004) (holding actual fraudulent conveyance claims brought later than four years after the transaction must be brought within one year of when the creditor knew or, with reasonable

diligence, should have known of the existence of the cause of action); In re Bushey, 210 B.R. 95, 99 n.5 (B.A.P. 6th Cir. 1997) (noting that "because Ohio applies a discovery-of-the-fraud rule" to the state's UFTA, a cause of action for a fraudulent transfer was not barred by the extinguishment clause where the action was brought one year after discovery of the fraudulent conduct); Fidelity Nat'l Title Ins. Co. of N.Y. v. Howard Sav. Bank, 436 F.3d 836, 839 (7th Cir. 2006) (noting UTFA's limitations period under the one-year savings provision does not begin to run until "discovery that the plaintiff has been wrongfully injured.") (citation omitted).

     Secondly, Defendants' position is contrary to the statutory purpose of PUFTA . Reading the relevant provision in its entirety, section 5109(2) says that where a transfer was made with the actual intent to hinder, delay or defraud, no cause of action exists four years after the transfer or, if more than four years have passed, no more than one year after the transfer was or could reasonably have been discovered. Common sense would therefore necessitate a finding that a cause of action for fraud will not accrue until the claimant discovered or should have discovered the facts constituting the fraud. To hold otherwise would in essence be a complete derogation of the UFTA itself. The obvious goal of UFTA is to discourage fraud. As noted by the court in Freitag, if the statute of limitations was to begin to run when the transfer was made, without regard as to whether the claimant discovered or could have discovered the fraudulent nature of the transfer, those responsible for the concealing the fraudulent transfers would be rewarded. Freitag, 133 Wash.2d at 824. The court also importantly notes that within UFTA itself lies a mandate to apply the common law to the extent it is not inconsistent with the provisions of the act. Section 5110 of Pennsylvania's version of UFTA, also states that "unless displaced by the provisions of this chapter, the principles of law and equity, including . . . fraud,

misrepresentation, duress, coercion . . . or other validating or invalidating cause supplement its provisions."

Finally, Plaintiffs correctly submit that even if <u>Western Hay</u> was authoritative, the facts in <u>Hay</u> are distinguishable from this case. In <u>Western Hay</u>, a judgment creditor issued a writ of garnishment on a judgment-debtor's bank account and learned that all the assets contained within the account had been dissipated. The judgment-creditor then waited nearly a year to subpoena records to learn what happened to the assets. Upon receiving the subpoenaed records, the judgment-creditor learned the identity of the transferees. Although the judgment-creditor filed suit within one year of learning the identity of the transferees, the court held that the suit was time-barred since plaintiffs should have filed suit after learning the debtor's assets had been dissipated. Unlike <u>Hay</u>, the transfers here do not immediately suggest the occurrence of a fraudulent transfer, as the existence of such transfer was not concluded until it was discovered that Mr. Cordua, not Mr. Nestel, was cashing the checks. This point is further made given that Defendants tellingly argue both that Plaintiffs should have been aware of the United's involvement in the alleged check-cashing scheme after receiving the checks at issue and that no fraudulent transfers ever occurred since United only received the allowable 1% fee.

As the Court has previously determined that the relevant inquiry is the discovery of the fraudulent nature of the transfer and not the transfer itself, the Court also finds that Defendants have failed to establish that Plaintiffs knew or should have known about the fraudulent nature of transfers prior to the Midtown trial. Although the underlying claim reeked of fraudulent activity, possession of the checks alone would not reasonably lead Plaintiffs to assume that Defendants were involved in a fraudulent check cashing scheme with Mr. Nestel. An action for fraudulent

transfers requires money to be transferred to a third party transferee. Plaintiffs assert that prior to trial they believed Mr. Nestel was cashing the checks and keeping the proceeds for himself, which eviscerates the necessary element that monies be transferred to a third party. Furthermore, the Defendants have neither cited to relevant authority nor provided the Court with any evidence demonstrating why Plaintiffs' belief would be unreasonable. The checks received by Plaintiffs reveal only the amount of the check, that Mr. Nestel signed the checks and that United endorsed them. Even if Plaintiffs were aware that United cashed the checks, as the Defendants argue, the checks did not reveal Mr. Cordua's involvement which is the connecting piece to Plaintiffs' fraudulent transfer claim. Consequently, a genuine issue of fact remains as to this key issue.

Additionally, the Court need not address Defendants' contention that Plaintiffs failed to exercise due diligence in its investigation of the fraudulent transfers since the Pennsylvania Supreme Court has made clear that issues regarding a party's due diligence is a factual determination to be determined by the jury. Taylor v. Tukanowicz, 290 Pa.Super. 581, 586, 435 A.2d 181 (1981). Summary judgment on the issue of Plaintiffs' actual intent to defraud claim is therefore denied.

### b)   Plaintiffs' Tort claims

The Court also finds that Plaintiffs' conspiracy and concerted tortious action claims are timely for the same reasons as stated above.

### 2. United's Argument that Plaintiff failed to Establish Prima Facia Claims

United further contends that the Court should grant summary judgment on Plaintiffs claims since Plaintiff has failed to adduce any evidence that United is a debtor or transferee under PUFTA or NJUFTA or that United otherwise engaged in actual or constructive fraud in violation

of PUFTA and NJUFTA.  Additionally, United asserts that Plaintiff has failed to provide any evidence in support of each and every element of the civil conspiracy and concerted tortious action claims.  In defending against a motion for summary judgment, the non-moving party need not prove their case and only need establish a genuine issue of material fact to ensure that the action proceeds to trial.  See Fed. R. Civ. P. 56(c)(1)(B).  The Court has previously determined that an issue of fact exists as to Plaintiffs' PUFTA and NJUFTA claims.  The facts of this case establish that United cashed over a million dollars worth of checks that were provided to them in sealed envelopes by Mr. Cordua who was not a payee on any of the checks and who allegedly had no financial interest in the transactions.  United also admits that these transactions were never documented although this was a common procedure put in place to prevent the precise fraudulent transfers that Plaintiffs allege to have occurred. This evidence alone is sufficient to suggest that there is a genuine issue of material fact exists and that this action should proceed to trial.  Accordingly, the United Defendants' motion for summary judgment is also denied.

## IV.  CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment as to Plaintiffs' constructive fraud claims is granted; the motion is denied as to the remaining claims.  An appropriate order follows.

**BY THE COURT:**
**/s/ Petrese B. Tucker**
_____
**Hon. Petrese B. Tucker, U.S.D.J.**